George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 100
Las Vegas, NV 89123
Tele. 702.880.5554
E-fax: 702.967.6666
Email: info@freedomlegalteam.com
*Counsel for Plaintiff Theresa Stone, individually and*
*on behalf of all others similarly situated*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

THERESA STONE, individually and on
behalf of all others similarly situated,

|                 |                                 |
|-----------------|---------------------------------|
| Plaintiff,      | CASE NO. 2:24-cv-00195          |
|                 | **CLASS ACTION COMPLAINT**      |
| -vs.-           | **Jury Trial Demanded**         |

EQUIFAX INFORMATION SERVICES
LLC,

Defendant.

1

The Fair Credit Reporting Act imposes significant obligations upon consumer reporting agencies, mandating them to diligently pursue maximum accuracy in the credit information they report. This pursuit is crucial for the fair and efficient functioning of our banking system. However, in the specific context of private student loans that have been discharged through bankruptcy, Equifax Information Service LLC, along with other credit reporting agencies, systematically and knowingly fall short of meeting these standards.

Plaintiff Theresa Stone initiates this class action complaint against Equifax with the objective of upholding her rights, as well as those of a nationwide class of borrowers who find themselves in similar circumstances, all within the framework of the FCRA. This legal action seeks to ensure that individuals, who were once burdened by exploitative private student loan debt, are afforded the "fresh start" that our bankruptcy system promises.

## I.    INTRODUCTION

1.    When individuals find themselves overwhelmed by insurmountable debt, federal law has historically offered the lifeline of bankruptcy, providing a fresh start and a chance for financial recovery. However, for debtors whose student loans have been discharged through bankruptcy, a significant hurdle stands in the way: consumer reporting agencies' refusal to differentiate between student loans that have been discharged and those that have not. This erroneous practice of reporting discharged student loan debt as outstanding prevents tens of thousands of debtors from realizing the fresh start that bankruptcy is intended to provide.

2.    Fortunately, those who suffer from this injustice, and whose financial well-being and future prospects are compromised due to inaccurately reported debt, do have recourse. Recognizing the critical role of fair and accurate credit reporting in maintaining the efficiency of the nation's banking system and safeguarding consumers, Congress enacted the Fair Credit Reporting Act, codified in 15 U.S.C. §§ 1681, et seq. (referred to as "the FCRA").

3.    "The FCRA was born out of congressional concerns regarding misconduct within the credit reporting industry. The legislative history of the FCRA reveals its intent to shield

consumers from the dissemination of erroneous information about them and to establish credit reporting practices that utilize precise, pertinent, and up-to-date information while preserving confidentiality and responsibility. These consumer-centric objectives support a broad interpretation of the FCRA." *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (paraphrased for clarity).

4.      Among the foundational principles guiding the FCRA, Congress recognized that "[c]onsumer reporting agencies play a pivotal role in aggregating and evaluating consumer credit and related data." 15 U.S.C. § 1681(a)(3). Consequently, "there exists a need to ensure that consumer reporting agencies fulfill their weighty responsibilities with equity, impartiality, and a profound respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).[1]

5.      When debt becomes unbearable, federal law has long offered bankruptcy as a fresh start. For debtors whose student loans are discharged in bankruptcy, there is an obstacle to that relief: the refusal of consumer reporting agencies to distinguish student loans that are discharged in bankruptcy from those that are not. By wrongfully reporting discharged student loan debt as due and owing, consumer reporting agencies prevent tens of thousands of debtors from getting the fresh start bankruptcy promises.

6.      Equifax and other consumer reporting agencies have consistently breached these crucial obligations over the years. Consequently, the Plaintiff initiates this legal action to enforce her rights under the law.

7.      There exists a widespread and fundamental misconception in the United States regarding the long-term consequences of filing for consumer bankruptcy on an individual's creditworthiness. Many consumers mistakenly believe that because a bankruptcy can be reflected on their credit report for ten years, their creditworthiness will be tarnished for the same duration. This assumption is inaccurate.

---

[1]  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, such as creditors and debt servicers, called "furnishers."

8.      In actuality, the majority of consumers who opt to file for consumer bankruptcy do so with the intention of improving their credit score and rectifying their poor creditworthiness.

9.      Creditors and lending institutions are well aware of the misconception that filing for consumer bankruptcy irreparably damages an individual's creditworthiness for a decade.

10.     To perpetuate the aforementioned bankruptcy myth and derive financial gain from it, creditors intentionally and systematically disregard industry standards for accurately reporting bankruptcies and the debts encompassed within them. This practice is designed to maintain consumers' credit scores at lower levels and interest rates at higher rates.

11.     Creditors are cognizant that by deviating from recognized credit reporting standards, consumers will encounter difficulties in elevating their credit scores and enhancing their creditworthiness.

12.     Another widespread bankruptcy myth prevalent among the American public, one central to this case, is the belief that no educational loan can be discharged through bankruptcy. This assumption is unfounded.

13.     The Bankruptcy Code, in fact, designates certain educational loans as non-dischargeable in bankruptcy, encompassing federally insured loans and private education loans that meet the criteria outlined in the tax code. *See* 11 U.S.C. §§ 523(a)(8)(A) & (B).

14.     For a private education loan to be a "Qualified Education Loan" under the tax code, it must be extended to an eligible student pursuing education at an accredited institution, specifically for eligible expenses. *See* 26 U.S.C. §§ 221(d)(1), (2).

15.     However, some private loans designated for educational purposes can indeed be discharged through standard bankruptcy proceedings, just like the majority of other consumer debts. Commercial banks and other lenders offer various types of student loans that do not fall under the category of Qualified Education Loans as per 11 U.S.C. § 523(a)(8)(B). These include, but are not limited to:

a. Loans where the loan amount exceeds the "cost of attendance" (e.g., tuition, books, room, and board), typically occurring when a loan is directly disbursed to the consumer.

b. Loans intended to fund education at institutions ineligible for Title IV funding, such as unaccredited colleges, foreign schools, or unaccredited training and trade certificate programs.

c. Loans designed to cover fees and living expenses incurred during bar exams or other professional examinations.

d. Loans provided to cover fees, living expenses, and relocation costs associated with medical or dental residency.

e. Loans extended to students enrolled in less than half-time study.

*See* "Unfair Billing and Collection Practices After Bankruptcy Discharges of Certain Student Loan Debts," Bulletin 2023-01, 03162023 CFPBGUIDANCE (C.F.P.B.), 2023 WL 2898365.

16.     Lenders catering to students have originated and managed dischargeable consumer loans but have misrepresented them as non-dischargeable student loans to borrowers lacking sophisticated knowledge. This tactic aims to unlawfully collect millions of dollars in private student loan debt that has, in truth, been discharged through bankruptcy.

17.     Consumer reporting agencies, including the defendant Equifax Information Services LLC ("Equifax" or "Defendant"), neglect to implement reasonable procedures ensuring the utmost accuracy of reports furnished with information regarding private student loans discharged in bankruptcy. This failure to follow reasonable procedures results in the inaccurate reporting of private student loans that have undergone bankruptcy discharge (referred to as "Non-Qualified Education Loans").

18.     Instead, Equifax and other consumer reporting agencies inaccurately report these discharged student loan debts as still outstanding, delinquent, charged off, or bearing other negative and derogatory notations.

19.     Theresa Stone ("Ms. Stone" or "Plaintiff") files this Class Action Complaint, seeking damages, injunctive relief, and any available legal or equitable remedies on her behalf and on behalf of all others similarly situated (referred to as the "Class" or "Class Members"). This action arises from Equifax's unlawful practice of systematically reporting misleading, derogatory, and erroneous information on consumers' credit reports, as defined by 15 U.S.C. § 1681a(g).

20.     Equifax has failed to properly investigate disputes concerning inaccurate data reported by Navient in consumers' credit files, failed to correct such inaccuracies, which Equifax either knew or should have known were erroneous, causing harm to the Class. Additionally, Equifax conducted an unauthorized inquiry into Plaintiff's "consumer report" and accessed Plaintiff's credit information without a permissible purpose, resulting in damage to Plaintiff's creditworthiness.

21.     Plaintiff further contends, on behalf of herself and the Class, that Equifax neglects to employ reasonable procedures guaranteeing the utmost possible accuracy of private student loans discharged in bankruptcy. Equifax also fails to follow reasonable procedures to ensure maximum accuracy, leading to the inaccurate reporting of private student loans that have undergone bankruptcy discharge, resulting in harm to Plaintiff and the Class.

22.     These allegations are made by Plaintiff based on information and belief, with the exception of those allegations that specifically pertain to Plaintiff, which are based on her personal knowledge.

23.     While specific violations are described in detail below, this Complaint asserts violations of the cited statutes in their entirety.

24.     Any violations committed by Equifax were deliberate and intentional, and Equifax failed to establish procedures reasonably designed to prevent such violations.

25.     Unless explicitly stated otherwise, references to "Equifax" in this Complaint encompass all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

26.     Unless indicated otherwise, all actions conducted by Equifax occurred on a nationwide scale.

### JURISDICTION AND VENUE

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p, as a civil action to enforce liability under federal law.

28.     This Court has personal jurisdiction over Defendant through its business operations in this District and the specific acts in the District giving rise to this lawsuit. Defendant's business includes assembling credit information both concerning individuals in the District—including Plaintiff and class members—and from creditors in the District, as well as preparing and furnishing credit reports concerning individuals residing in the District to those who seek them, including to third parties in the District. Accordingly, Defendant purposefully avails itself of the markets within this District, rendering the exercise of jurisdiction by this Court just and proper.

29.     Venue is proper in the Southern District of Nevada pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and because Plaintiff resides in this District.

### II.      PARTIES

30.     Ms. Stone is a natural person residing in Clark County, Nevada. In addition, Ms. Stone is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

31.     Defendant Equifax Information Services LLC ("Equifax" or "Defendant") is one of the three major Credit Rating Agencies in the United States. Equifax regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties. Equifax uses interstate commerce to prepare and furnish the reports. Accordingly, Equifax is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f). Equifax does business in Nevada, with its principal place of business in Georgia.

///

///

### III.    FACTUAL ALLEGATIONS

### A.  INDIVIDUAL ALLEGATIONS REGARDING PLAINTIFF

32.    In approximately August 2008, Ms. Stone enrolled at Roseman University in Henderson, Nevada.

33.    Roseman was not an accredited, Title IV-eligible institution under the Higher Education Act or 26 U.S.C. § 221(d). It was not included on the list of Title IV institutions published by the Department of Education for the academic year 2008-2009. (*See* **Exhibit A**).

34.    Because Roseman was not a Title IV school, Ms. Stone was not eligible for federally-funded student loans when she enrolled.

35.    On or about August 19, 2008, Ms. Stone borrowed $45,000.00 in a private loan to originally issued by Bank of America to attend Roseman.

36.    Upon information and belief, the Loan was subsequently sold by Bank of America to Towd Point, the current owner of the Loan. The Loan is serviced by Pennsylvania Higher Education Assistance Authority, d/b/a American Education Services ("AES"). Together, Towd Point and AES furnish credit information for credit reports related to the Loan, and for purposes of this Complaint are collectively referred to as "the Furnishers."

37.    This $45,000 private loan exceeded Roseman's cost of attendance for the 2008-2009 school year.

38.    The Loan was not made solely for the "cost of attendance" and Roseman was not a Title IV school. Accordingly, for both reasons, the Loan was not a "qualified education loan" as that term is defined pursuant to 26 U.S.C. § 221(d)(1) and 11 U.S.C. § 523(a)(8)(B).

39.    The Furnishers were aware that the Loan was not a Qualified Education Loan that was exempt from discharge in bankruptcy. Rather, it was a dischargeable Non-Qualified Education Loan.

40.     On March 28, 2017, Ms. Stone filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada in Case No. 17-11490 (*In re Theresa Stone*) (the "Bankruptcy"). Ms. Stone properly scheduled the Loan on Schedule F of her petition. (**See Exhibit B**).

41.     The Loan was scheduled in the bankruptcy and the Furnishers received notice of the bankruptcy.

42.     While the "automatic stay" was in effect during the bankruptcy, it was illegal and inaccurate for the Furnishers to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection.

43.     Despite their legal obligation to do so, the Furnishers did not file any proceedings to declare the alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523, *et seq.*

44.     The Furnishers also did not request relief from the "automatic stay" codified at 11 U.S.C. §362, *et seq.,* which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any *personal* liability for any of the underlying Debts.

45.     On August 5, 2022, the Bankruptcy Court for the District of Nevada entered an order discharging all of Ms. Stone's properly scheduled, pre-petition debts. The discharge order is attached to this complaint. (**See Exhibit C**).

46.     Just like most of Ms. Stone's consumer debts, her private student loans exceeding the cost of attendance were discharged in the bankruptcy proceeding.

47.     Furthermore, since Roseman was an unaccredited college, Ms. Stone's private student loan was discharged in her Bankruptcy.

48.     Instead of treating Ms. Stone's Loan as discharged, the Furnishers demanded repayment from Ms. Stone on said Loan and resumed their attempts to collect on the Loan after it was discharged.

49.    The Furnishers' representations that the debt was due and owing was false and misleading as Plaintiff did not owe a debt to the Furnishers.

50.    Equifax was notified of the bankruptcy discharge.

51.    Instead of reporting that this Loan had been discharged in bankruptcy, Equifax continues to report this Loan as "past due" with an outstanding reported balance of $68,832, and a past due balance of $1,110 as of December 16, 2022. Equifax reports the "date of first delinquency" as "Oct[ober] 2022"—after the Loan, along with other dischargeable debt, was discharged in bankruptcy. (*See* **Exhibit D at 43–45).**

52.    On December 22, 2022, Ms. Stone sent Equifax a letter disputing the accuracy of her credit report.  **(See Exhibit E).**

53.    In a response dated January 26, 2023, Equifax confirmed that reporting was correct. **(See Exhibit F).**

54.    Upon information and belief, Equifax did not reasonably investigate Ms. Stone's dispute and did not update her credit report to reflect the Loan as discharged in bankruptcy.

55.    On March 9, 2023, Ms. Stone sent Equifax another letter disputing the accuracy of her credit report.  **(See Exhibit G).**

56.    In a response dated April 5, 2023, Equifax had updated this trade-line by reporting it as charge off.  Equifax was still reporting the account as delinquent. **(See Exhibit H).**

57.    Upon information and belief, Equifax did not reasonably investigate Ms. Stone's dispute and did not update her credit report to reflect the Loan as discharged in bankruptcy.

58.    Upon information and belief, Equifax knew and should have known that this Loan was a Non-Qualified Education Loan that was discharged in bankruptcy.

59.    Equifax's inadequate reporting practices were and are done in violation of the Fair Credit Reporting Act.

60.    Equifax's reporting practices have injured Plaintiff by, *inter alia*, decreasing her credit score and transmitting this inaccurate credit score to third parties.

61.    Equifax's reporting practices have injured and continue to injure Ms. Stone's reputation because everyone who looks at her credit report believes she is past due on this account when in fact Ms. Stone's personal obligation on this account was discharged in bankruptcy.

62.    But for Equifax's failure to accurately report the discharged status of the Loan, Ms. Stone would have been offered better credit terms by potential and existing creditors.

63.    The fact that Ms. Stone completed a bankruptcy—a bankruptcy which itself accurately appears on her credit report—makes it even more important for Ms. Stone's credit report to accurately reflect that she has changed her behavior and is no longer in financial trouble.

64.    Equifax's inaccurate reporting negatively affects creditors' perception of Ms. Stone's financial affairs and creditworthiness.

65.    Ms. Stone's credit report has been viewed by multiple potential creditors, all of whom were wrongly informed that Ms. Stone is currently in default on the Loan debt.

66.    For instance, upon information and belief, Ms. Stone applied for a Capital One credit card in December 2022, after the bankruptcy, resulting in a hard inquiry of her credit report.

67.    Upon information and belief, Ms. Stone received much higher interest rates on this and other offers of credit because of Equifax's inaccurate reporting of the status of her Loan.

68.    Upon information and belief, Ms. Stone's December 16, 2022 credit report from Equifax reflected six inquiries, with the most recent being Credit Karma, Inc. on December 15, 2022. **(Exhibit D at 4).**

69.    15 U.S.C. § 1681e requires consumer reporting agencies, including Equifax, to follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.

70.    Instead, upon information and belief, Equifax accepts whatever information is provided by furnishers without having any procedure to ensure that reporting of that debt is accurate.

71.    Upon information and belief, Equifax does not take any action to ensure accuracy of dischargeable student loan accounts post-bankruptcy, let alone maximum possible accuracy.

72.    Upon information and belief, Equifax is aiding lenders of dischargeable private student loans in wrongfully collecting on these discharged debts from Plaintiff and others by refusing to mark these debts as discharged in bankruptcy.

73.    Equifax's reporting practices have injured Plaintiff by decreasing her credit score and depriving her of the "fresh start" that Congress intended she should have after bankruptcy.

74.    Plaintiff would have experienced an increase in her credit score had Equifax not incorrectly shown that she was past due on her Non-Qualified Education Loan and she would not have been misled into repaying this discharged debt for years.

75.    Plaintiff's reputation is being injured because her credit reports indicate she is past due on accounts that were discharged in her bankruptcy.

76.    But for Equifax's failure to accurately report her Non-Qualified Education Loan as discharged in bankruptcy, Plaintiff would have been offered better credit terms by potential and existing creditors.

77.    Plaintiff has received numerous denials of credit because of Equifax's failure to properly investigate the Furnisher's false credit reports.

78.    Plaintiff has delayed trying to buy a house or have children because of her credit as reported by Equifax and the other consumer reporting agencies.

**B.  GENERAL ALLEGATIONS**

79.    Ms. Stone is among many thousands of persons in the United States who have filed bankruptcies pursuant to the U.S. Bankruptcy Code and who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2)

successfully challenged as non-dischargeable by one of the creditors in a related adversary proceeding.

80.    As a result of a major class action settlement, the consumer reporting agencies have agreed to revise their procedures to report all pre-bankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. *See White v. Experian Info Solutions, Inc.*, Case No. CV 05-01070, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008) (lead case number).

81.    Therefore, even the consumer reporting agencies acknowledge that the accurate and proper way to report the status of all pre-bankruptcy debts, like Plaintiff's and Class Members' debts, following successful Bankruptcy discharges of the debt, is "Discharged in Bankruptcy" (or the equivalent).

82.    The furnishers of data about Class Members' loans refuse to provide updated credit information to the credit reporting agencies that Class Members' debts are no longer "open," "charged off," or "past due" because they have been discharged in bankruptcy.

83.    Whether a private student loan issued pre-bankruptcy petition is a non-dischargeable Qualified Education Loan or a Non-Qualified Education Loan discharged in bankruptcy is a question of fact.

84.    For instance, whether the institution for attendance at which a given loan is issued is a Title IV institution is readily verifiable by consulting the list of accredited Title IV institutions published annually by the United States Department of Education.

85.    The FCRA requires that consumer reporting agencies employ reasonable procedures to ensure the maximum possible accuracy of reports from furnishers of information about private student loans.

86.    Equifax does not follow reasonable procedures to ensure maximum accuracy of private student loans that are not exempted from discharge under 11 U.S.C. § 523(a)(8)(B).

87.    Equifax does not have a reasonable procedure to accurately report if a private loan was a Qualified Education Loan or a Non-Qualified Education Loan.

88.    In fact, upon information and belief, Equifax has no procedure at all to evaluate whether a student loan is a Qualified Education Loan or a Non-Qualified Education Loan.

89.    Equifax inaccurately reports all private student loans, both Qualified Education Loans and Non-Qualified Education Loans, as not discharged and as still due and owing even after a bankruptcy discharge.

90.    Major student lenders such as Navient publicly disclose that Non-Qualified Education Loans made for attendance at non-Title IV schools are dischargeable in bankruptcy. (*See* **Exhibit E).**

91.    Furnishers of credit information maintain and provide the fact and date of the loan, the fact and date of the bankruptcy filing and the chapter, the fact and date of the bankruptcy discharge, and the identity of the school that the debtor attends.

92.    Equifax has access to the Department of Education's annual public list of schools eligible to participate in programs under Title IV of the Higher Education Act.

93.    Lenders of private student loans and their furnishers have access to the Department of Education's annual public list of schools eligible to participate in programs under Title IV of the Higher Education Act.

94.    Equifax could reasonably require furnishers to verify that the institution for attendance at which each loan was issued was on the list of accredited Title IV institutions for a given academic year according to the Department of Education.

95.    Equifax could itself reasonably verify that the institution for attendance at which each loan was issued was on the list of accredited Title IV institutions for a given academic year according to the Department of Education.

96.    Inaccurately reporting discharged Non-Qualified Education Loans causes direct economic and emotional harm to debtors in the form of higher credit scores, denial of credit, increased cost of credit, out of pocket expenses to correct reports, and reputational injury.

## IV.    CLASS ACTION ALLEGATIONS

97.    All Class Members share a similar factual narrative.

98.    All Class Members borrowed Non-Qualified Education loans either (1) for attendance at non-Title IV institutions, or (2) that exceeded the cost of attendance at their institution.

99.    These loans exceeded the cost of attendance at their respective institutions.

100.    All Class Members filed for bankruptcy protection in the United States Bankruptcy Court.

101.    At the conclusion of these bankruptcy cases, all Class Members were issued discharge orders.

102.    These Discharge Orders extinguished all debt on Non-Qualified Education Loans that were not excepted from discharge by 11 U.S.C. § 523(a)(8).

103.    Accordingly, all Class Members are persons for whom the debts at issue have been discharged through bankruptcy.

104.    Nevertheless, Equifax and other consumer reporting agencies continue to report all Class Members' Non-Qualified Education Loans as still due and owing.

105.    As a matter of policy and practice, Equifax regularly and consistently fails to ensure credit information for accounts containing private student loans that were discharged in bankruptcy pursuant to discharge orders is accurate by updating the credit reports to reflect these debts as discharged.

106.    Despite being fully aware of its legal obligations, Equifax continuously breached those obligations.

15

107.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action

individually and on behalf of a class initially defined as:

**National Class**: All persons who (1) received private educational loans and were not attending Title IV educational institutions at the time they received the loan, (2) filed for bankruptcy in any district court of the United States and were issued a Discharge Order since October 17, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act),  and (3) whose loans Equifax has since reported as if they were not discharged in bankruptcy on the individual's credit reports.

**Nevada Class**:  All residents of Nevada who (1) received private educational loans and were not attending Title IV educational institutions at the time they received the loan, (2) filed for bankruptcy in any district court of the United States and were issued Discharge Orders since October 17, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), and (3) whose loans Equifax has since reported as if they were not discharged in bankruptcy on the individual's credit reports.

108.    Excluded from the Classes are Defendant's officers and directors; any entity in

which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys,

successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the

judiciary to whom this case is assigned, their families and members of their staff.

109.    Plaintiff reserves the right to amend the definitions of the Classes or add a Class if

further information and discovery indicate that the definitions of the Classes should be narrowed,

expanded, or otherwise modified.

110.    Certification of Plaintiff's claims for class-wide treatment is appropriate because

Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claims.

### a. Numerosity

111.    The members of the Classes are so numerous that joinder of all of them is

impracticable. While the exact number of Class Members is unknown to Plaintiff at this time,

based on information and belief, the Class consists of thousands of Defendant's customers whose

"private student loans" were incurred prior to them filing bankruptcy, whose loans were

subsequently discharged in their bankruptcy, and for whom Defendant continues to report the loans as due on their credit reports.

### b. Commonality

112.    There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a)    whether Defendant has continued to report these loans as "due and owing" or "past due" outstanding debts even though the individual's Non-Qualified Education Loans were incurred prior to them filing bankruptcy and were subsequently discharged in their bankruptcy; and

b)    whether Defendant's failure to correctly report each Class Member's loans as discharged in bankruptcy is willful; and

c)    whether Defendant's current procedure for ensuring maximum possible accuracy in each Class Member's credit reports is reasonable.

### c. Typicality

113.    Plaintiff's claims are typical of those of other Class Members because Plaintiff, like every other Class Member, took out a loan while attending a school that was not accredited under Title IV, which was accordingly discharged in bankruptcy, and Defendant has failed to update her credit information to accurately reflect the loan as discharged in bankruptcy.

### d. Adequacy of Representation.

114.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff's Counsel is competent and experienced in relevant areas of law. Milberg Coleman Bryson Phillips Grossman, PLLC, is competent and experienced in litigating class actions, while the Freedom Law Firm, LLC, is competent and experienced in bankruptcy law and procedure and student loan litigation.

**e. Predominance**.

115.    Defendant has engaged in a common course of conduct toward Plaintiff and Class Members by seeking to collect debt from them when their "private student loans" were discharged in bankruptcy. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

**f. Superiority**.

116.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

117.    Defendant has acted, or refused to act, on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## V.    CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Negligent Violations of 15 U.S.C. §1681e(b)**
**(On Behalf of Plaintiff and All Class Members)**

118.    Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

119.    Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a.

120.    Defendant is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing "consumer reports," as that term is defined in 15 U.S.C. § 1681a(d).

121.    Defendant uses the means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports, and therefore is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

122.    In preparing Credit Reports, Defendant has failed to use reasonable procedures to ensure maximum possibly accuracy of information relating to the discharged Non-Qualified Education Loans of Plaintiff and the Class, in violation of 15 U.S.C. § 1681e(b).

123.    Upon information and belief, Defendant has no procedure at all to evaluate whether a student loan is a Qualified Education Loans that is non-dischargeable, or a Non-Qualified Education Loan that is discharged in bankruptcy.

124.    Defendant inaccurately reports all private student loans, both Qualified Education Loans and Non-Qualified Education Loans, as not discharged and as still due and owing even after a bankruptcy discharge.

125.    Defendant could adopt further reasonable procedures to ensure the maximum possible accuracy of reported credit information, such as by requiring furnishers of credit information to indicate through a binary code whether each education loan reported was issued for attendance at a Title IV institution. If it was not a Title IV institution, and the loan was obtained pre-bankruptcy, then the debt would have been discharged in bankruptcy, and Defendant could so report it.

126.    As a result of Defendant's failure to use reasonable procedures to ensure accuracy, Defendant has erroneously reported the Loan as having a past due balance, and similarly failed to report the Non-Qualified Education Loans of all Class Members as having been discharged in bankruptcy.

127.    Defendant's failure to comply with the requirements of 15 U.S.C. § 1681e(b) is negligent within the meaning of 15 U.S.C. § 1681o(a).

128.    As a result of Defendant's negligent noncompliance with the FCRA, Plaintiff and Class Members have been injured, and are entitled to actual damages and attorneys' fees under 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**
**Willful Violations of 15 U.S.C. §1681e(b)**
**(On Behalf of Plaintiff and All Class Members)**

129.    Plaintiff fully incorporates by reference all of the above paragraphs, as though fully set forth herein.

130.    Plaintiff is a "consumer" as that term is defined in 15 U.S.C. § 1681a.

131.    Defendant is regularly engaged in the practice of assembling and evaluating consumer credit information for the purpose of preparing "consumer reports," as that term is defined in 15 U.S.C. § 1681a(d).

132.    Defendant uses the means and facilities of interstate commerce for the purpose of preparing and furnishing consumer reports, and therefore is a "consumer reporting agenc[y]" within the meaning of 15 U.S.C. § 1681a(f).

133.    In preparing Credit Reports, Defendant has failed to use reasonable procedures to ensure maximum possibly accuracy of information relating to the discharged Non-Qualified Education Loans of Plaintiff and the Class, in violation of 15 U.S.C. § 1681e(b).

134.    Upon information and belief, Defendant has no procedure at all to evaluate whether a student loan is a Qualified Education Loans that is non-dischargeable, or a Non-Qualified Education Loan that is discharged in bankruptcy.

135.    Defendant inaccurately reports all private student loans, both Qualified Education Loans and Non-Qualified Education Loans, as not discharged and as still due and owing even after a bankruptcy discharge.

136.     Defendant could adopt reasonable procedures to ensure the maximum possible accuracy of reported credit information, such as by requiring furnishers of credit information to indicate through a binary code whether each education loan reported was issued for attendance at a Title IV institution. If it was not a Title IV institution, and the loan was obtained pre-bankruptcy, then the debt would have been discharged in bankruptcy, and Defendant could so report it.

137.     As a result of Defendant's failure to use reasonable procedures to ensure accuracy, Defendant has erroneously reported the Loan as having a past due balance, and similarly failed to report the Non-Qualified Education Loans of all Class Members as having been discharged in bankruptcy.

138.     Defendant's failure to comply with the requirements of 15 U.S.C. § 1681e(b), particularly by failing to maintain any procedure at all to determine whether an education loan is qualified or not, is willful within the meaning of 15 U.S.C. § 1681n.

139.     As a result of Defendant's willful noncompliance with the FCRA, Plaintiff has been injured, and is entitled to actual damages, statutory damages, punitive damages and attorneys' fees under 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

140.     Wherefore, Plaintiff, individually and on behalf of the other members of the Class proposed in this complaint, respectfully requests that the Court enter judgement in favor of Plaintiff and the Class and provide the following relief:

- Certifying this action as a class action, with a Class as defined above;

- Declaratory and injunctive relief;

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance with the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15

U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance with the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendant for each incident of negligent noncompliance with the FCRA;

- An award of costs of litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendant for each incident of noncompliance with the FCRA;

- For equitable relief enjoining Defendant from engaging in the wrongful acts and omissions complained of herein pertaining to the reporting of derogatory, misleading, and inaccurate information on consumers' credit reports;

- Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

///
///
///
///
///
///
///
///
///
///
///
///

## VI.     TRIAL BY JURY

141.     Pursuant to Federal Rules of Civil Procedure 38 and the seventh amendment to the Constitution of the United States of America and the Constitution of the State of Nevada, Plaintiff is entitled to, and demands, a trial by jury.

DATED this 29th day of January 2024.

Respectfully submitted,

**FREEDOM LAW FIRM**

*/s/ Gerardo Avalos*
George Haines, Esq.
Gerardo Avalos, Esq.
8985 South Eastern Ave., Suite 100
Las Vegas, NV 89123

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

Scott C. Harris*
N.C. Bar No: 35328
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5003
Facsimile: (919) 600-5035
sharris@milberg.com

Gary M. Klinger*
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

*To motion for appearance *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*