UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| THERESA STONE, *et al.*,<br><br>                     Plaintiffs,<br>    vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, *et al.*,<br><br>               Defendants. | Case No.: 2:24-cv-00195-GMN-EJY<br><br>**ORDER GRANTING<br>MOTION TO COMPEL ARBITRATION** |

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 66), filed by Defendant Experian Information Solutions, Inc. ("EIS").[1]  Plaintiff Carter Sullivan filed a Response, (ECF No. 85), to which Defendant replied, (ECF No. 86).  Further pending before the Court is Defendant's Motion for Leave to File Notice of Supplemental Authority, (ECF No. 87), in support of its Motion to Compel Arbitration.  No response was filed and the time to do so has passed.

For the reasons discussed below, the Court **GRANTS** the Motion to Compel Arbitration and **GRANTS** the Motion for Leave to File Notice of Supplemental Authority.[2]

I.    **BACKGROUND**

This action arises from Defendants Equifax Information Services, LLC, Trans Union, LLC, and Experian Information Solutions, Inc.'s alleged violations of the Fair Credit Reporting

---

[1] The Motion to Compel Arbitration was originally filed at ECF No. 66, however, Defendant filed a Notice of Corrected Image for its Motion to Compel Arbitration at ECF No. 67.  The Court refers to the corrected motion, (ECF No. 67), throughout the rest of the Order.

[2] Under Local Rule 7-2(g), "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."  Defendant filed a Motion for Leave to File Notice of Supplemental Authority, informing the Court about an Eleventh Circuit decision. (*See* Mot. Leave, ECF No. 87).  Plaintiff did not file Responses, or otherwise object to the Motion for Leave.  Because Plaintiff does not oppose, and for good cause appearing, the Court GRANTS the Motion for Leave to File Notice of Supplemental Authority. *See* LR 7-2(d).

Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Plaintiff Carter Sullivan is a Member in this Class Action suit alleging violations of the FCRA. (First Am. Compl. ("FAC") ¶ 5, ECF No. 62). EIS was added as a Defendant on May 9, 2025. (*Id.* ¶ 4).

Plaintiff is a member of CreditWorks, the name of EIS's credit monitoring service, provided by Experian's affiliate, ConsumerInfo.com ("CIC"). (Smith Decl. ¶ 1, Ex. 1 to Mot. Compel, ECF No. 67-1). CIC also does business as Experian Consumer Services ("ECS"). (*Id*). Defendant is an affiliate of CIC/ECS and both entities are subsidiaries of Experian Holdings, Inc. (*Id.* ¶ 2). Experian plc is the parent company of EIS and CIC/ECS. (*Id.*)

Plaintiff enrolled in CreditWorks on February 12, 2023. (*Id.* ¶ 3). In order to successfully enroll in CreditWorks, Plaintiff completed a single webform that required him to input his personal information (*e.g.,* his name, address, phone number, and email address). (*Id.*). He then had to click the "Create Your Account" button on the bottom of the webform. (*Id.*). Between the areas to enter an email address and the "Create Your Account" button, there was black text that read: "By clicking 'Create your Account,' I accept and agree to your Terms of Use Agreement." (Webform Screenshot, Ex. 1 to Smith Decl., ECF No. 67-1). "Terms of Use Agreement" was written in blue text, rather than black. (*Id.*) The blue text contains a hyperlink that, when clicked, shows the entire Terms of Use Agreement ("TUA"). (Smith Decl. ¶ 4, Ex. 1 to Mot. Compel). The only way for Plaintiff to enroll in the CreditWorks service is by clicking the "Create Your Account" button. (*Id.* ¶ 5).

The TUA defines ECS as encompassing "affiliates (including, but not limited to Experian Information Solution, Inc.)." (TUA, Ex. 2 to Smith Decl. at 1, ECF No. 67-1). The subsequent "Dispute Resolution by Binding Arbitration" ("Arbitration Agreement") section of the TUA reads: "For Purposes of this arbitration provision, references to "ECS," "you," and "us" shall include our respective parent entities, subsidiaries, [and] affiliates." (*Id.* at 7). The

Arbitration Agreement requires parties to the agreement to arbitrate all claims against ECS and its affiliates that "relate to" or "arise out of" the agreement. (*Id.*).

## II.    LEGAL STANDARD

Section 2 of the FAA provides that:

> A written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (alteration in original).  Thus, the Court's "role under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013).  In answering these questions, the Court must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).  The party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by [a] preponderance of the evidence." *Bridge Fund Cap.*

*Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (internal quotation marks and citation omitted).  If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

### III.    DISCUSSION

Defendant EIS filed a Motion to Compel Arbitration against Plaintiff Carter Sullivan, arguing that the Arbitration Agreement is a valid and enforceable instrument which requires Plaintiff to arbitrate all claims arising out of his contract with Defendant. (*See generally* Mot. Compel).  As such, Defendant asserts that the case should be stayed pending arbitration. (*Id.*). Plaintiff opposes the motion, asserting that Defendant has failed in its burden to prove the existence of a valid Arbitration Agreement. (Resp. 11:4–9, ECF No. 85).  Moreover, Plaintiff asserts that even if Defendant can establish that a valid Arbitration Agreement exists, Defendant is neither a party nor a third-party beneficiary to the Arbitration Agreement and is therefore unable to compel arbitration. (*Id.* 6:13–23, 8:26–9:1).  The Court first addresses whether a valid arbitration agreement exists.

#### A.  Validity of Arbitration Agreement

The Court's "role under the [FAA] is. . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee*, 737 F.3d at 1261.  Because Plaintiff does not raise any opposition regarding the second prong, the Court need only address whether a valid arbitration agreement exists.  In evaluating the validity of the Arbitration Agreement, the Court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995).  In Nevada, an agreement constitutes an enforceable contract where there is "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  The party seeking to compel arbitration, in this case

Defendant, bears the burden of proving the existence of a valid agreement by a preponderance of the evidence. *Wilson v. Huuuge, Inc.,* 944 F.3d 1212, 1219 (9th Cir. 2022).

Defendant claims that Plaintiff signed a valid agreement to arbitrate when he clicked the "Create Your Account" Button on the CreditWorks website. (Mot. Compel 5:17–6:13).  To support this argument, Defendant offers a declaration by Dan Smith, the Director of Product Operations for CIC. (Smith Decl. ¶ 1, Ex. 1 to Mot. Compel).  In the declaration, Smith testifies as to his role at CIC, confirms the date that Plaintiff created his CreditWorks account, and outlines the procedure necessary to create such an account, which necessarily included Plaintiff agreeing to terms of arbitration. (*Id.* ¶¶ 1, 3).  Plaintiff, however, challenges the validity of the Arbitration Agreement arguing that (1) the Smith Declaration is inadmissible, (2) the declaration does not prove the existence of the contract, and (3) Plaintiff did not receive proper notice of the Arbitration Agreement negating the element of mutual assent. (*See generally* Resp.).

### 1.  Admissibility of the Smith Declaration

Plaintiff first argues that the Smith Declaration is inadmissible and cannot be used as evidence to prove the existence of the Arbitration Agreement. (*Id.* at 11:4–14).  For evidence to be admissible under Federal Rule of Civil Procedure ("FRCP") 56(c)(4), a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. Pro. 56(c)(4).  "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602.  It may also "be inferred from a declarant's position." *In re Kaypro,* 218 F.3d 1070, 1075 (9th Cir. 2000).

Here, Smith testified to his position and duties at CIC/ECS. (Smith Decl. ¶ 1, Ex. 1 to Mot. Compel).  He describes the process that Plaintiff would have to complete to successfully create a CreditWorks account. (*Id.* at ¶ 3).  Smith also verified Plaintiff's account through

CreditWork's internal records. (*Id.* at ¶ 1).  In evaluating similar declarations, also made by Smith in other lawsuits, courts found that "Smith's job title and description of his duties are sufficient to establish his personal knowledge of the steps a customer must take (and the webpages a customer must encounter) when signing up for a CreditWorks account." *Oatway v Experian Sols., Inc.*, No. 2:24-CV-00523-LK, 2024 WL 4879822, at *4 (W.D. Wash. Nov. 25, 2024) (quoting *Williams v. Experian Info. Sols. Inc.,* No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *15 (D. Ariz. Aug. 20, 2024).  Persuaded by the reasoning of those courts in evaluating the admissibility of almost identical declarations by Smith, the Court finds that the evidence provided in Smith's declaration was from the declarant's personal knowledge and is therefore admissible under FRCP 56(c)(4).

### 2.  The Declaration is Sufficient to Establish a Valid Contract

Plaintiff next contends that because Smith testified only to his knowledge of the enrollment process, rather than about Plaintiff's actual experience, the declaration fails to establish the existence of a contract. (Resp.12:25–13:13).  Plaintiff does not dispute the facts offered in the declaration, namely that Plaintiff "(1) enrolled in CreditWorks; (2) . . . completed a single 'webform' which collected [Plaintiff]'s personal information; and (3) . . . accepted and agreed to ConsumerInfo.com's terms of Use Agreement by clicking a button labeled 'Create Your Account.'" (*Id.* at 12:7–11).  Rather, he contends that Smith lacked personal knowledge because Smith had no way of knowing what Plaintiff actually saw on his electronic device because he was not in the room with Plaintiff. (*Id.* at 12:11–12).

Courts in this circuit have generally found Smith's declarations offered in other similar cases sufficient to establish the existence of a contract. *See, e.g., Bryant v. JPMorgan Chase Bank, N.A.*, 763 F. Supp. 3d 946, 950 (C.D. Cal. 2025); *Oatway,* 2024 WL 4879822, at *5 ("Smith's declaration is therefore sufficient to show that he has personal knowledge of the enrollment process and [Plaintiff]'s enrollment based on his job duties and his review of

Experian's business records."). Requiring Smith to have personal knowledge of Plaintiff's specific enrollment data, or to validate what Plaintiff saw on his device "imposes a far greater burden for personal knowledge than what is required." *Oatway,* 2024 WL 4879822, at *4.

Plaintiff relies on *Newton v. Experian Info. Sols.,* in which a court found a similar declaration by Smith insufficient to establish the existence of a valid contract, to support his position. No. CV 623-059, 2024 WL 3451895 (S.D. Ga. July 18, 2024), *rev'd and remanded*, No. 24-12398, 2025 WL 2102084 (11th Cir. July 28, 2025). Plaintiff's reliance on *Newton*, however, is misplaced. Since filing his Response, the district court's finding in *Newton*—that the declaration by Smith was inadmissible—has been overruled by the Eleventh Circuit. *Newton v. Experian Info. Solutions, Inc.,* No. 24-12398, 2025 WL 2102084, at *3 (11th Cir. July 28, 2025). In making its ruling, the panel found that the declaration was sufficient because Smith was able to confirm the date and time of enrollment, as well as "the exact path the consumer encountered when completing their enrollment." *Id.* (quotation omitted). The Court therefore joins numerous other courts and finds that Smith's declaration in this case is sufficient to establish the existence of a valid contract.

### 3. Notice

Plaintiff finally contends that even if a contract was formed, the website did not provide sufficient notice such that Defendant fails to establish mutual assent. (Resp. 13:27–14:18). If a website operator cannot demonstrate actual notice, mutual assent may be found on a theory of inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025). In internet contracts, a website using a "sign-in wrap" "provides a link to terms of use and indicates that some action may bind the user but does not require that the user to actually review those terms." *Chabolla v ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). "Courts should expect that a reasonable

internet user is more vigilant in looking for contractual terms when the context of the transaction reasonably implies a contractual relationship." *Godun*, 135 F.4th at 709.

Looking at the form itself, the Court concludes that a reasonably prudent internet user would be aware that they were being bound to the Terms of Use.  The "Terms of Use" hyperlink is in a contrasting blue font, and the text clearly states: "By clicking 'Create Your Account' I accept and agree to your 'Terms of Use Agreement.'" (Webform Screenshot, Ex. 1 to Smith Decl.).  Plaintiff does not dispute that he took the affirmative action of clicking on the "Create Your Account" button.  In examining an identical webform, other courts have come to the same conclusion as this Court. *See, e.g.*, *Saucedo v. Experian Info. Sols., Inc.* No. 1:22-cv-01584-ADA-HBK, 2023 WL 4708015, at *5 (E.D. Cal. July 24, 2023); *Driskill v Experian Info. Sols., Inc.,* 753 F. Supp. 3d 839, 845 (N.D. Cal. 2024); *Oatway,* No. 2:24-cv-00523-LK 2024, WL4879822, at *6.  Accordingly, the Court finds that Plaintiff was provided notice of the Arbitration Agreement and a valid agreement to arbitrate exists.

**B. Defendant is a Party to the Arbitration Agreement**

The Court next examines whether Defendant may directly enforce the arbitration agreement as a party.  In this case, the Arbitration Agreement requires Plaintiff to arbitrate all claims against ECS that "relate to" or "arise out of" the Arbitration Agreement. (TUA at 10, Ex. 2 to Smith Decl.).  The Arbitration Agreement defines all references to ECS to include "respective parent entities, subsidiaries, [and] affiliates." (*Id.*).  The TUA specifically names Defendant as one of the affiliates included in the Arbitration Agreement. (*Id.* at 4).

Despite this, Plaintiff argues that Defendant is not a party to the Arbitration Agreement, because Defendant and CIC/ECS are entirely separate legal entities. (Resp. 6:21–23).  In his Response, Plaintiff cites *Revitch v DIRECTTV, LLC,* which found that DirectTV was not a party to an arbitration agreement that the plaintiff had entered into with AT&T Mobility, an affiliate of DirectTV. 977 F.3d 713, 718 (9th Cir. 2020).  However, *Revitch* is distinguishable

from the facts here.  In *Revitch* , the court found that DirectTV was not a party to the agreement because it was not an affiliate of AT&T *at the time the agreement was entered into*; rather it became affiliated with AT&T years after the plaintiff and AT&T entered into the agreement. *Id.* at 717.  The fact that AT&T and DirectTV were not affiliates at the time of the agreement was dispositive: "[h]ad the wireless services agreement stated that "AT&T" refers to 'any affiliates, both present and future,' we might arrive at a different conclusion." *Id.* at 718.  Here, in contrast, Defendant was already affiliated with CIC when Plaintiff entered into the Arbitration Agreement.  Indeed, the very language of the TUA informed Plaintiff that he would be bound in arbitration with Defendant.

Plaintiff further contends that, because Defendant and CIC/ECS provide different services, the Court should find that EIS is not a party to the Arbitration Agreement. (Resp. 8:14–25).  He describes the services provided by CIC, including credit monitoring, CreditWorks, Experian Boost, and Financial Management Tools. (*Id.* at 7:19–24).  Defendant, on the other hand, provides statutory credit reporting. (*Id.* at 7:25–26).  Again, relying on *Revitch*, Plaintiff asserts that Defendant may not be a party to the agreement, because the services it provides are only "tangential" to those provided by CIC. (*Id.* at 8:17–19).  But, as stated above, *Revitch* rests on the impossibility of the plaintiff knowing he would be bound in arbitration with an as of yet unaffiliated entity. *Revitch*, 977 F.3d at 718.  It also found that neither the services provided by DirectTV (cable television service) nor the dispute between it and the plaintiff had "anything to do with providing wireless services." *Id.* at 717.  Here, in contrast, although CIC and Defendant provide different services, CIC depends on Defendant as a source of credit data; the two entities are not wholly unrelated. (Reply. 9:24–25, ECF No. 86).

Importantly, the Ninth Circuit, and district courts within the Ninth Circuit, have found that Defendant, as an affiliate of ECS and CIC, is a party to arbitration agreements between

consumers and ECS. *Meeks v. Experian Info. Servs., Inc.,* No. 21-17023, 2022 WL 17958634, at \*2 (9th Cir. Dec. 27, 2022); *Bryant*, 763 F. Supp. 3d at 951; *Driskill*, 753 F. Supp. 3d at 847.

The Court, for the reasons discussed above, joins other courts in the circuit in finding that Defendant is a party to the Arbitration Agreement. Accordingly, Defendant may compel Plaintiff into arbitration.[3]

**C. Stay of Plaintiff Sullivan's Claims Against Defendant EIS**

Defendant next argues that the Court should impose a stay pending arbitration proceedings. (Mot. Compel 11:23). Plaintiff does not file any points and authorities opposing Defendant's request to stay the case. *See* LR 7-2(d). Case law provides that courts *should* stay or dismiss the claims subject to arbitration. *Nagrampa*, 469 F.3d at 1276–77. But "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). Accordingly, the Court enters a stay in this case, only as to Plaintiff Carter Sullivan's claims against Defendant Experian Information Solutions, Inc. because they are subject to arbitration.

**IV.   CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration, (ECF No. 66), is **GRANTED**. The Court enters a **STAY** in this case only as to Plaintiff Carter Sullivan's claims against Defendant Experian Information Solutions, Inc. because they are subject to arbitration.

---

[3] Defendant argues that if the Court did not find it to be a party to the Arbitration Agreement, it could alternatively enforce the Arbitration Agreement as a third-party beneficiary. (Mot. Compel 9:10–11:11). Because the Court finds that Defendant is a party to the Arbitration Agreement, and may therefore compel arbitration, it will not address whether Defendant is a third-party beneficiary.

**IT IS FURTHER ORDERED** that Defendant Experian Information Solutions, Inc.'s Motion for Leave to File Supplemental Authority, (ECF N. 87), is **GRANTED.**

**DATED** this ___3___ day of February, 2026.

_____

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT